# EXHIBIT A

서울시 서초구 서초대로 264
(법조타워 2층)
[별지 제41호서식]

공증
인가    **법무법인 유일**

(전화) 02-567-4377
(팩스) 02-563-8181

Registered No.    2021 - 1417

# NOTARIAL CERTIFICATE

## YUIL LAW & NOTARY OFFICE Inc.

264, Seocho-daero,
Seocho-gu, Seoul, Korea



210mm X 297mm
보존용지(1종) 70g/㎡





Barcode for document reader

February 5, 2021

# Suwon District Court

## 8th Civil Affairs Bench

### Judgment



| | |
|---|---|
| Case | 2018 Na 54323 Loans |
| Plaintiff and Respondent | Korea Deposit Insurance Corporation, Bankruptcy Administrator for Bankrupt Tomato Savings Bank Co., Ltd. |
| | (Da-dong, Korea Deposit Insurance Corporation), 30, Cheonggyecheon-ro, Jung-gu, Seoul |
| | Representative, President Joo Hyun Kim |
| | Litigation Representative Law Firm Freedom Life |
| | Attorneys in Charge Gi Hyeok Park and Seong Ho Lee |
| Defendant and Appellant | DEBBIE A SUH (Korean name: Hyeon Ju Suh) |
| | 88 King St APT 1321, San Francisco, CA 94107, USA |
| | Litigation Representative Gwang Ho Ha, Attorney |
| Judgment from the First Trial | Seongnam Branch, Suwon District Court Judgment 2013 Ga Dan 34692 decided November 21, 2013 |
| Conclusion of Pleading | 2021. 01. 21. |
| Pronouncement of Judgment | 2021. 02. 04. |

### Order

1. The first-instance judgment is vacated.




www.scourt.go.kr

Barcode for document reader

2. The Defendant shall, jointly and severally with Jung Sun Suh, the Co-Defendant of the first-instance judgment, pay to the Plaintiff KRW 956,166,827, as well as the interest accrued on KRW 470,576,109 thereof from June 18, 2013 to the date of full payment at the rate of 25% per annum.

3. All expenses of the litigation shall be borne by the Defendant.

4. Paragraph 2 above may be subject to provisional execution.

## Purpose of Claims and Purpose of Appeal

**[Purpose of Claims]**

The Defendant shall, jointly and severally with Jung Sun Suh, the Co-Defendant of the first-instance judgment (hereinafter "Jung Sun Suh"), pay to the Plaintiff KRW 956,166,827, as well as the interest accrued on KRW 470,576,109 thereof from June 18, 2013 to the date of full payment at the rate of 25% per annum.

**[Purpose of Appeal]**

The part of the first-instance judgment regarding the Defendant shall be vacated. The Plaintiff's claims against the Defendant shall be dismissed.

## Reasons

**1. Basic Facts**

A. Tomato Savings Bank, Co., Ltd. is a mutual savings bank established for the provision of loans and other businesses and was declared bankrupt by Suwon District Court on August 31, 2012, in the 2012 Ha Hap 23 case. On the same date, the Plaintiff was appointed the Bankruptcy Administrator (hereinafter, save when a distinction is required, Tomato Savings Bank, and the Plaintiff shall be collectively referred to as the "Plaintiff.")





www.scourt.go.kr

Barcode for document reader

B. The Plaintiff and the Defendant (a US citizen residing in Korea at the time) executed a written loan agreement wherein the loan type was a comprehensive bankbook loan, the transaction type was a revolving loan transaction, the loan limit was KRW 500,000,000, the drawdown date was May 15, 2008, the maturity date was May 15, 2009, the interest rate was 12% per annum, and the default interest rate was 25% per annum (hereinafter the "Written Loan Agreement"; the agreement itself is the "Loan Agreement"). A rubber seal impression wherein "May 15, 2008" is written is placed on the top right corner of the Written Loan Agreement.

C. At the time of executing the Written Loan Agreement, a letter of commitment, a pledge agreement, and a written approval of disposition were executed. The letter of commitment includes an indication to the effect of "The Party commits to request a loan from the Bank for acquiring the subscription money for Taurus Investment and Securities, and create a pledge right on, and provide as collateral, the subscribed shares at the time of the foundation of Taurus Investment and Securities."

D. Jung Sun Suh, the father of the Defendant, stood joint guarantee for the Defendant's obligations under the Loan Agreement within a limit of KRW 750,000,000.

E. As of June 17, 2013, the principal and interest[1] and the provisional payment[2] under the Loan Agreement total at KRW 956,166,827, as indicated in the table below.

| Principal | Interest (default interest) | Provisional payment | Total |
|---|---|---|---|
| KRW 470,576,109 | KRW 485,133,518 | KRW 457,200 | KRW 956,166,827 |

---

[1] According to Article 5(1) of the Loan Agreement, "In cases where any obligation under this Agreement exists, the amount deposited into a comprehensive bankbook basic account (hereinafter an "Underlying Account") shall be automatically applied to the satisfaction of payment obligations under this Agreement." Paragraph 4 of the same Article stipulates that "The interest and default interest accrued thereon shall be deducted from the Underlying Account or shall be added to the loan amount, notwithstanding whether the amount is in excess of the maximum loan amount specified in Article 1. In such a case, the Obligor shall immediately pay the excess amount to the Savings Bank." Article 2(2) of the agreement stipulates that "In cases where the Obligor fails to perform the Obligor's obligations on the maturity date, or the Obligor is accelerated in accordance with Article 7 of the Standard Terms and Conditions on Loan Transactions of Mutual Savings Bank, the Obligor shall pay the default interest of the outstanding loan amount accruing from such maturity date." As of June 2, 2009, which immediately follows the maturity date of the Loan Agreement, the balance of the account created under the Loan Agreement (319-01-13-2146202) after the deposits and withdrawals (including the interests and the default interest withdrawn from the account on account of the Defendant's failure to pay them) was KRW 488,704,683. The amount remaining after deducting KRW 18,128,574, which is the amount recovered by the Plaintiff by receiving a dividend payment from Taurus Investment and Securities on July 27, 2011, stands at KRW 470,576,109. Therefore, the outstanding principal of the loan on which the default interest may be accrued is KRW 470,576,109.

[2] Page 1 of the Written Loan Agreement contains a sentence to the following effect, "I (the Defendant) hereby agree that the Standard Terms and Conditions on Loan Transactions of Mutual Savings Bank will apply to the loan transaction performed in accordance with the following terms and conditions." Article 4(1)1 of the Standard Terms and Conditions on Loan Transactions of Mutual Savings Bank stipulates that "The Obligor shall bear the expenses regarding the exercise and preservation [referring to provisional attachment or provisional disposition (including termination)] of claims, security rights, and other rights held by the Savings Bank against the Obligor, the sureties, and the guarantor in rem." Therefore, the Defendant is liable to pay the expenses incurred by the Plaintiff regarding the exercise and preservation of the claims under the Loan Agreement. The Plaintiff spent a total of KRW 457,200 to cover the expenses regarding provisional attachment, notarized certificates, and execution clause for the successor between May 11, 2012, and May 27, 2013, after the Defendant failed to pay the principal and interest by the maturity date. Therefore, the Defendant is liable to provide the Plaintiff with a provisional payment in the amount of KRW 457,200.





www.scourt.go.kr

Barcode for document reader



[Grounds for Recognition] Undisputed facts, Exhibits Gap [translator's note: Exhibit Gap (갑호증, *Gaphojeung*) refers to an exhibit submitted by the plaintiff] No. 1–5, 8–10, 13, and 15–19 [The Defendant claims that Exhibit Gap No. 1 (Written Loan Agreement, the same document as Exhibits Gap No. 15) was forged. However, this court recognizes the authenticity of the document as discussed in Section 3 of this judgment. Furthermore, the Defendant seems to claim that Exhibits Gap No. 9 (Pledge Agreement), No. 10-1 (Written Approval of Disposition), and No. 10-2 (Letter of Commitment) were also forged. However, the fact that the seal impression placed on the documents is from the Defendant's seal can be recognized from the testimony of Jung Sun Suh, who is the witness of this trial, and the video of Exhibit Gap No. 8, and the documents are presumed to be authentic. Given the circumstances discussed in Section 3 of this judgment, the exhibits provided by the Defendant are not sufficient to hold that the documents were forged. If there is no reference to the subitems of the exhibits, the exhibits include the subitems] Exhibit Eul [translator's note: Exhibit Eul (을호증, *Eulhojeung*) refers to an exhibit submitted by the defendant] No. 2, parts of the testimony of Jung Sun Suh, who is a witness of this trial, and the overall gist of the pleadings.

## 2.  Regarding the Legality of the Appeal of this Case

### A. Plaintiff's Argument

An authentic copy of the first-instance judgment was duly served on the Defendant's father, Jung Sun Suh, on November 27, 2013. The Defendant learned of the filing of the lawsuit of this case and the pronouncement of the first-instance judgment from Jung Sun Suh. Even if the Defendant was not aware of the facts, the Plaintiff filed a lawsuit claiming the recognition of the first-instance judgment against the Defendant with a court in the United States, and on January 6, 2015, during the said lawsuit, an authentic copy of the first-instance judgment was served on the Defendant, at which time the Defendant must have learned of the pronouncement of the first-instance judgment. Therefore, the subsequent completion appeal filed by the Defendant is unlawful, as it was filed 30 or more days after the service of the first-instance judgment.

### B. Judgment







www.scourt.go.kr

Barcode for document reader

### 1) Recognized Facts

A) On June 20, 2013, the Plaintiff filed a request for a payment order against the Defendant and Jung Sun Suh (Seongnam Branch, Suwon District Court 2013 Cha 3020). In the request form submitted by the Plaintiff, the Obligor section indicated the Defendant's address as "#1313, Life Office-tel (hereinafter the "Office-tel") 40, 63-ro, Yeongdeungpo-gu, Seoul," and Jung Sun Suh's address as "#1207, the Office-Tel."

B) On July 4, 2013, the first-instance court issued a payment order, saying, "The Defendant and Jung Sun Suh shall, jointly and severally, pay to the Plaintiff KRW 956,166,827, as well as the interest accrued on KRW 470,576,109 thereof from June 18, 2013 to the date of full payment at the rate of 25% per annum, within a guarantee limit of KRW 750,000,000 for Jung Sun Suh." On July 5, 2013, the court sent authentic copies of the payment order to the aforementioned addresses. However, on July 11, 2013, the documents were not served on account of "unknown recipient."

C) In response, on July 17, 2013, the first-instance court issued an address correction order to the Plaintiff. On August 1, 2018, the Plaintiff changed the addresses of the Defendant and Jung Sun Suh to "#1306 of the Office-tel" (the addresses of the Defendant and Jung Sun Suh indicated on the Certificate of Residence in Korea of the Defendant and Jung Sun Suh attached to the correction form are the same as the addresses indicated in the complaint).

D) The first-instance court sent authentic copies of the payment order to the address on August 9, 2013, and a) Jung Sun Suh received the service of the document at the address on August 16, 2013, on behalf of the Defendant in the capacity of an office clerk, and b) the document was not served on Jung Sun Suh on August 16, 2013, on account of "unknown recipient."

E) On August 26, 2013, Jung Sun Suh filed a written objection in the Defendant's name and his name with the first-instance court (the Obligor section of the written objection indicates the same addresses of the Defendant and Jung Sun Suh as the complaint), thereby moving the payment order case to trial (Seongnam Branch, Suwon District Court 2013 Ga Dan 34692)



www.scourt.go.kr



Barcode for document reader

F) On October 1, 2013, the first-instance court sent notices of date for pleading for the Defendant and Jung Sun Suh to #1306 of the Office-tel. The notices arrived at the address on October 10, 2013 [Jung Sun Suh received the service of the notice for the Defendant in the capacity of a cohabitant (father) at the Defendant's address, and received the service of the notice for himself in the capacity of the person to be served the document].

G) On November 7, 2013, the first-instance court proceeded with the date for pleading with only the Plaintiff present and closed the pleading. On the same date, the first-instance court sent notices of date for the pronouncement of judgment for the Defendant and Jung Sun Suh to #1306 of the Office-tel. The notices arrived at the address on November 11, 2013 (Jung Sun Suh received the service of the notice for the Defendant in the capacity of an employee or office worker at the Defendant's place of business or office, and received the service of the notice for himself in the capacity of the person to be served the document).

H) On November 21, 2013, the first-instance court pronounced a judgment in favor of the Plaintiff. On November 25, 2013, the first-instance court sent authentic copies of the first-instance judgment to #1306 of the Office-tel. The authentic copies arrived at the address on November 27, 2013 [Jung Sun Suh received the service of the copy for the Defendant in the capacity of a cohabitant (father) at the Defendant's address, and received the service of the copy for himself in the capacity of the person to be served the document].

I) Meanwhile, on December 5, 2014, the Plaintiff filed a lawsuit for the recognition of the foreign-country judgment against the Defendant with the Superior Court of California, County of Riverside (hereinafter the "US Court") in California, United States (hereinafter the "US Lawsuit"). The US Court sent documents including a subpoena, an authentic copy of the first-instance judgment, and a translated version of the judgment to the Defendant's address in the United States, and the Defendant received all of the documents on January 6, 2015.





www.scourt.go.kr

Barcode for document reader

J) The US Court pronounced a judgment in favor of the Plaintiff on July 27, 2016, and the Defendant filed an appeal on September 20, 2016. The Defendant also filed a separate appeal against the first-instance judgment with the first-instance court on December 7, 2016.

[Ground for Recognition] Undisputed facts, Exhibits Gap No. 6, 7, and 12, Exhibits Eul No. 5–10, and the overall gist of the pleadings

**2) Judgment**

**A) Applicable Legal Principles**



(1) In principle, the service of a document should be effected on a "place of service" such as the domicile, residence, business place, or office of the person on whom service is to be made, as stipulated in Article 170(1) of the Civil Procedure Act. A "domicile" is a place that serves as a basis for living. Two domiciles may coexist at the same time (Article 18, Civil Act). A place that serves as a basis for living means a place that forms the center of a person's living and relationship, which should be determined based on objective facts about the person's living and relationship including whether he/she lives with any family members or has any asset at the place (see Supreme Court Judgment 89 Nu 8064 decided August 14, 1990, and others). A residence is a place where a person lives continuously for a certain period, although not to an extent that it constitutes a basis for living. Meanwhile, in cases where the person to be served was not found at his/her place of service, documents may be served by providing the documents to the person's employee, employer, or cohabitant with sufficient mental capacity to understand the situation. Such service is referred to as supplementary service. However, supplementary service is only allowed at a "place of service" specified by the said provision of the Civil Procedure Act. In cases where an employee, employer, or cohabitant of the person to be served was found at a place that is not a place of service, offering the documents to the employee, etc. at such a place does not constitute a legal supplementary service even if the employee, etc. did not refuse to receive the documents (Supreme Court Decision 2001 Ma 3790 decided August 31, 2001).



www.scourt.go.kr



Barcode for document reader

(2) An appeal should be filed within two weeks from the date on which the written judgment was served (main sentence, Article 396(1), Civil Procedure Act), and the period for filing an appeal shall be an invariable period (Paragraph 2 of the same Article). However ,if the authentic copy of a first-instance judgment was not duly served, the period for filing an appeal against the judgment does not proceed, and the judgment cannot be deemed to be conclusive, even in the formal sense. Therefore, the issue of subsequent completion of litigation does not arise in such cases, and the appeal was duly filed as it was before the service of the authentic copy of the first-instance judgment (see Supreme Court Judgment 94 Da 45449 decided December 22, 1994; Supreme Court Judgment 97 Da 10354 decided May 30, 1997, and others). The provision on the invariable period is, by its nature, a mandatory provision. Therefore, a defect in the service of the authentic copy of a judgment, which serves as the starting point of the calculation of the appeal period, cannot be deemed to have been remedied by the party's loss or waiver of the right to file an objection (see Supreme Court Judgment 72 Da 379 decided May 9, 1972; Supreme Court Judgment 78 Da 2448 decided September 25, 1979, and others).

**B) Judgment on Specific Issues**



**(1) Regarding Whether the Defendant Was Duly Served the Authentic Copy of the First-Instance Judgment**

**(A) Service in Korea on November 27, 2013**

As previously noted, on November 21, 2013, the first-instance court pronounced a judgment in favor of the Plaintiff, and on November 25, 2013, the court sent an authentic copy of the first-instance judgment for the Defendant to #1306 of the Office-tel. On November 26, 2013, Jung Sun Suh received the service of the copy for the Defendant as a cohabitant (father) at the Defendant's address. However, in principle, the service should be effected on a "place of service" such as the domicile, residence, business place, or office of the person on whom service is to be made, and there is no evidence to hold that #1306 of the Office-tel, to which the first-instance court sent authentic copies of the first-instance judgment, constitutes a "place of service" including the Defendant's domicile, residence, business place, or office (the Defendant is a US citizen and was residing in the United States in or around November 2013. The address of the residence in Korea reported by the Defendant on August 1, 2011, is not the address indicated above, but #1313 of the Office-tel. In addition, there is no record to hold that #1306 of the Office-tel constitutes a residence in which the Defendant lived continuously for a certain period during the Defendant's stay in Korea). However, on November 27, 2013, the first-instance court served the authentic copies of the first-instance judgment to #1306 of the Office-tel, which is not a residence. The service is unlawful and, therefore, invalid (as noted above, as long as #1306 of the Office-tel does not constitute a place of service for the Defendant, even if Jung Sun Suh, the Defendant's father, received the authentic copy of the first-instance judgment, such supplementary service is unlawful and therefore invalid.



www.scourt.go.kr



Barcode for document reader

The Plaintiff argues that, considering the progress of the US Lawsuit, the Defendant was well aware of the pronouncement of the first-instance judgment and possibly received an authentic copy of the first-instance judgment from Jung Sun Suh. However, even if the Defendant received an authentic copy of the first-instance judgment from Jung Sun Suh, it does not constitute a lawful service, and such a defect with the service of the authentic copy of the first-instance judgment cannot be deemed to have been remedied by the party's waiver or loss of the right to file an objection).

**(B) Service in the United States on January 6, 2015**

As noted above, the Plaintiff filed the US Lawsuit against the Defendant with the US Court on December 5, 2014, and the Defendant received documents including an authentic copy of the first-instance judgment on January 6, 2015. However, a service is an order/notary notification carried out as an exercise of a court's right to adjudicate, whereby a court offers documents related to a lawsuit in ways specified in the law to the litigants and other related parties of the lawsuit, thereby notifying, or providing an opportunity to know, and notarizing the content of the documents. According to Article 174 of the Civil Procedure Act, "Unless otherwise prescribed in this Act, a service shall be effected by a court ex officio." According to Article 5 of the Act on International Judicial Mutual Assistance in Civil Matters, "Any entrustment to a foreign country shall be made by the presiding judge of the court which has accepted the lawsuit, to the competent court or other public office of the foreign country" and, a) the head of the court, to which the presiding judge of the court who wishes to make an entrustment to a foreign country belongs, shall request the Director of the Court Administration Office to send the written entrustment and other related documents, and b) the Director of the Court Administration Office shall request the Minister of Foreign Affairs to send the written entrustment and other related documents to the entrusted agency through a diplomatic channel.





www.scourt.go.kr

Barcode for document reader

Given the gist of the said provisions of the Civil Procedure Act and the Act on International Judicial Mutual Assistance in Civil Matters, and the fact that the Korean civil procedure system takes the principle of "*ex-officio*" service, a service cannot be deemed to have been lawfully effected under the Civil Procedure Act in this case where the first-instance did not sent an overseas request for service of the authentic copy of the first-instance judgment, but the first-instance judgment was served as a part of the litigation documents by a foreign court in the course of a related lawsuit. Therefore, the authentic copy of the first-instance judgment can hardly be deemed to have been lawfully served on the Defendant during the US Lawsuit.

**(2) Regarding Whether the Appeal Period Proceeds**

Therefore, as the authentic copy of the first-instance judgment was not lawfully served on the Defendant, the period for filing an appeal against the judgment does not proceed, and the Defendant's appeal was lawfully filed as it was filed before the service of the authentic copy of the first-instance judgment.

In addition, the first-instance court served the litigation documents including an authentic copy of the payment order at #1306 of the Office-tel, which is not a place of service for the Defendant. Then, the first-instance court rendered its judgment without lawfully serving the documents, which means the first-instance judgment was based on unlawful procedures. Therefore, this court cancels the first-instance judgment in its entirety pursuant to Article 417 of the Civil Procedure Act, restarts all procedures including the statements regarding the request for a payment order, the service of the documents, and the submission of evidence, and makes its own judgment on the merits of this case as follows (see Supreme Court Judgment 2004 Da 11988 decided October 15, 2004, and others).

**3. Judgment on Merits**

**A. Gist of the Litigants' Arguments**





www.scourt.go.kr

Barcode for document reader

### 1) Plaintiff's Argument

The Defendant is liable to pay to the Plaintiff KRW 956,166,827, which is the total of the principal and interest and provisional payment under the Loan Agreement, and the default interest accrued on KRW 470,576,109, which is the principal.

### 2) Defendant's Argument

The Defendant did not execute the Loan Agreement, the Defendant's signature on the Written Loan Agreement was forged, and the Defendant's seal impression next to the signature was not placed out of the Defendant's volition.[3] Therefore, the Defendant cannot accept the Plaintiff's claims.

### B. Judgment on the Cause for Claims

#### 1) Regarding Whether the Written Loan Agreement is Formally Admissible (Authentic)

#### A) Applicable Legal Principles

A private document is presumed to be authentic when it bears the signature, seal, or thumbprint of the principal or of his/her representative (Article 358, Civil Procedure Act), as long as at least one of the three exists on the document. If a seal impression placed on a private document bearing the name of the person in whose name the document was written is from the person's seal, barring special circumstances, the authenticity of the seal impression is presumed. In other words, the placement of the seal impression is presumed to have been carried out from the person's volition. If such authenticity is presumed, pursuant to Article 358 of the Civil Procedure Act, the authenticity of the entire document is presumed. Such presumption is broken if the seal impression was placed by a person other than the person in whose name the document was written, or placed by the said person against, or not based on, his/her own volition. A person who claims that the document was forged needs to prove that the seal impression was placed against the person's volition, and the evidence supporting such defense should have probative value beyond mere probability [see Supreme Court Judgment t 2019 Da 275977 (Main Litigation), 2019 Da 275984 (Counter Litigation), decided February 6, 2020].

---

[3]    The Defendant only argues that the signature on the Written Loan Agreement is not her own signature, and did not make any specific argument regarding the seal impression next to the signature, except for acknowledging that the seal impression is from her own seal. However, in light of the overall gist of the Defendant's pleading, this court understands the Defendant's arguments as including the claim that the seal impression was not placed out of the Defendant's volition.







www.scourt.go.kr

Barcode for document reader

### B) Judgment on Specific Issues

(1) Given the undisputed facts, the documents and videos in Exhibits Gap No. 1, 8, and 15, and the overall gist of Jung Sun Suh's testimony and the overall pleadings, the Defendant's seal impression next to the signature "SUH DEBBIE A" in the Obligor section of the Written Loan Agreement is from the Defendant's own seal. Barring special circumstances, the seal impression is presumed to have been placed out of her own volition, and as long as the authenticity is presumed, the authenticity of the entire document is presumed.

(2) (A) Regarding this issue, the Defendant refutes that the Defendant left Korea for Bali, Indonesia, at or around 10.00 a.m. on May 15, 2008, the date on which the Written Loan Agreement was executed. Therefore, the placement of the seal impression was carried out by a person other than the Defendant. As noted above, a rubber seal impression wherein "May 15, 2008" is written is placed on the top right corner of the Written Loan Agreement. According to Exhibits Eul No. 2, 12, and 27, the Defendant did leave Korea for Bali, Indonesia, on May 15, 2008.

(B) However, given the following facts that can be recognized from Exhibits Gap No. 1, 8, 15, and 20, the expert appraisal result provided by Hu Yeol Yang, who is the expert witness of this court, and the overall gist of the pleadings, the evidence submitted by the Defendant is not sufficient to hold that the seal impression placed on the Written Loan Agreement was placed against the Defendant's volition, and there is no evidence to conclude otherwise. Therefore, this court does not accept the Defendant's claim described above.



www.scourt.go.kr



Barcode for document reader

① First, even though a rubber seal impression wherein "May 15, 2008" is written is placed on the top right corner of the Written Loan Agreement, at the time, some mutual savings banks frequently had loan applicants' seal impressions placed on written loan agreements and other documents before actually providing loans, in consideration of the time required to review and approve applications and actually provide the loans, and add the dates of execution on the documents on the dates when the loans are actually provided. Pursuant to the same practice, the Written Loan Agreement seems to have been prepared before the loan provision date, which is May 15, 2008 (the possibility that the date in the document was subsequently placed on the loan provision date is supported by the fact that, of all the texts in the Written Loan Agreement and other related documents, only the letters "년 월 일 (year month day)" were placed using a rubber seal).

② Attached to the Written Loan Agreement is a certificate of the Defendant's seal impression that the Defendant had issued on May 8, 2008, and a copy of her passport (regarding the certificate, the Defendant claims that she had a certificate issued at Jung Sun Suh's request and provided the same to Jung Sun Suh without asking about his purpose; however, regarding the placement of her seal impression on the document, the Defendant has not provided an acceptable explanation to date) and, in particular, in the "Confirmation on the obligor / Seal compared" section, a staff has placed a confirmation seal impression to the effect that such confirmation and comparison were carried out.

③ According to the old Act on the Real Name Financial Transactions and Guarantee of Secrecy (revised by Act no. 8863 on February 29, 2008), a financial institution should engage in financial transactions using the parties' real names (Article 3(1)), and an officer or employee of a financial institution who violates the said provision is punishable by an administrative fine of not more than KRW 5 million (Article 7(1)). In addition, the Enforcement Decree of the same Act stipulated that the real names of foreigners should be identified using "the names and registration numbers indicated in the foreigner registration record sheet under the Immigration Act or, for foreigners without foreigner registrations, the names and numbers indicated on their passports and identifications" (Article 3, subparagraph 4), and the Enforcement Rules of the same Act (before the revision by Prime Minister Order No. 1110 on December 5, 2014), the names of foreigners used in financial transactions should be authenticated using foreigner registrations, foreigner group registrations, passports, or identifications (Article 3, subparagraph 4).



www.scourt.go.kr



Barcode for document reader

On the Written Loan Agreement, the name of the Defendant, who is a foreigner, is indicated as "SUH DEBBIE A," which is her name on the passport, and the agreement is attached with a copy of the passport. Then, it would be reasonable to conclude that a staff of the Plaintiff authenticated the name of the Defendant, who is a foreigner, used in the transaction in accordance with the relevant laws (the Defendant claims that she usually uses "Hyeon Ju Suh" or "Debbie A Suh," and she finds it strange that the name indicated on the Written Loan Agreement is "SUH DEBBIE A"; however, the latter name seems to have been chosen to provide the real name indicated on the passport, as specified in the relevant laws).

④  Meanwhile, even though the Defendant claims that the signature "SUH DEBBIE A" on the Obligor section of the Written Loan Agreement is not her handwriting, and the Written Loan Agreement was forged, a private document can be authenticated by either a signature, seal impression, or thumbprint and, as long as the Defendant's seal impression on the document is from the Defendant's seal, the authenticity of the Written Loan Agreement is presumed. On the other hand, if the signature next to the seal impression was clearly forged, the seal impression is highly likely to have been placed by a person other than the person indicated as the writer of the document. However, Exhibit No. 13 (Appraisal Report, which concludes that the handwriting of the signature on the Written Loan Agreement seems to be different from the Defendant's handwriting) was not prepared under the appraisal procedure prescribed in the Civil Procedure Act; it constitutes a private appraisal report that the Defendant requested and received out of the litigation procedure, and this report cannot be relied on because it does not satisfy the conditions required to ensure the fairness and objectivity of its content, including supervision by the court, disclosure to and participation by the litigants, and sanctions against false appraisals.





www.scourt.go.kr

Barcode for document reader

In addition, Hu Yeol Yang, who appraised the handwriting at the court's request, stated that, regarding the Korean part of the signature on the Written Loan Agreement (서 데비아), by comparing it to the other signature (서현주), the appraiser found similarities in the balance and harmony, proficiency level, and writing conditions of the letters, as well as the order of some strokes, angles, and parting points, but differences have been identified regarding the angles and separation of some strokes, and it is difficult to determine whether the handwritings are the same because of the lack of letters to compare and determine whether the similarities indicate the sameness of the handwriting. The appraiser also stated that, regarding the English signature (SUH DEBBIE A), by comparing it to the other signature (Debbie A Suh), the appraiser found similarities in the balance and harmony, proficiency level, and writing conditions of the letters, and similarities in writing habits including the starting and end points of the second stroke of the capital D infringing on the first stroke, the composition and angle of the letter S, the parting points and angles of the upper parts of the first and second strokes, and the right veering of the third stroke, but some differences have been identified in the form of some strokes, and because of the lack of materials to compare, it is difficult to determine whether the differences indicate different handwritings or were caused by the circumstances, psychological factors, and other changes at the time of writing them, and it is difficult to determine whether the handwritings are the same or not. As noted above, the appraiser merely expressed his reservation about determining the similarity of the signatures on account of the limited number of letters to compare (Korean letter "서," and English letters "S, D, and A") and, in particular, regarding the English signature (SUH DEBBIE A), similarities are observed with all components of the capital letters (S, D, A) that are also found in the other signature, and this is not sufficient to conclude that the Defendant's signature on the Written Loan Agreement was forged.





www.scourt.go.kr

Barcode for document reader

⑤ Jung Sun Suh, the Defendant's father, appeared before this court as a witness and stated that he did not inform the Defendant of the execution of the Loan Agreement, and he provided the Plaintiff's staff with the Defendant' seal in his possession and had the staff affix the seal on the Written Loan Agreement, but Jung Sun Suh's testimony cannot be relied on, considering the following: Jung Sun Suh did not provide any specific explanation on how the copy of the Defendant's passport came to be attached to the Written Loan Agreement; when filing an objection against the payment order, Jung Sun Suh only claimed that the Defendant had "lent her name," and did not claim that he executed the Loan Agreement by using the Defendant's seal against her will.

**2) Regarding Whether Loan Obligations Were Created Under the Loan Agreement**

As long as the authenticity of a disposition document is recognized, the court should recognize the existence and the content of the representations on the document barring clear and acceptable evidence that proves otherwise (Supreme Court Judgment 2018 Da 275727 decided February 14, 2019, and others) and, as noted above, the Written Loan Agreement (Exhibits Gap No. 1 and 15) are authentic, and therefore, the Plaintiff executed the Loan Agreement with the Defendant. As of June 17, 2013, the total of the principal and interest and the provisional payment under the Loan Agreement is KRW 956,166,827. Barring special circumstances, the Defendant is liable to pay to the Plaintiff, jointly and severally with Jung Sun Suh, who is the joint guarantee, KRW 956,166,827 and the default interest accrued on KRW 470,576,109 thereof, which is the principal, from June 18, 2013 to the date of full payment at the rate of 25% per annum.







www.scourt.go.kr

Barcode for document reader

### C. Judgment on the Defendant's Additional Arguments

#### 1) Regarding the Argument that the Loan Agreement Is Invalid

The Loan Agreement was actually entered into between the Plaintiff and Jung Sun Suh, and the Defendant was involved in name only, and the Defendant did not receive any of the loans. Then, the agreement is invalid under the proviso of Article 107(1) (Declaration of Untrue Intention), Article 108 (Fictitious Declaration of Intention in Collusion), or Article 104 (Unfair Juristic Act). The Defendant is not liable to pay the principal, interest, or provisional payment under the Loan Agreement.

#### 2) Judgment

A) (1) Regarding the argument that the Loan Agreement constitutes a declaration of untrue intention and a fictitious declaration of intention in collusion, if a third party placed his/her signature or sealed impression on loan documents as the main obligor, the third party has declared to the financial institution that he/she is the obligor of the loan agreement. Even if the third party intended to circumvent the loan restrictions of the financial institution by obtaining a loan in his/her name and allowing another person to use the amount, or have another person repay the principal and interest of the loan, barring special circumstances, such declaration only relates to an intent to vest the financial effect of the loan agreement in another person and does not cover vesting the legal effect of the agreement. Therefore, such declaration is neither a declaration that is inconsistent with the third party's true intention nor a fictitious declaration of intention (see Supreme Court Judgment 97 Da 8403 decided July 25, 1997; and Supreme Court Judgment 2002 Da 38675 decided April 8, 2003). As noted above, as the Defendant executed the Written Loan Agreement in her own name, the Defendant represented to the Plaintiff that she will bear the legal effect of the agreement and assume the liability as the obligor of the loan obligations, and such a declaration can be hardly regarded as a declaration of untrue intention or a fictitious declaration of intention in collusion. The evidence submitted by the Defendants is not sufficient to conclude that the Defendant, the Plaintiff, and Jung Sun Suh executed the Loan Agreement only perfunctorily with the intention of not holding the Defendant liable for the obligations, or that such a declaration of untrue intention existed.





www.scourt.go.kr



Barcode for document reader

(2) A bankruptcy administrator constitutes a third party under Articles 107(2) and 108(2) of the Civil Act, who came to have a practically new legal interest based on the juristic relationship ostensibly formed by the inconsistent or fictitious declaration. The good faith or bad faith of the bankruptcy administrator cannot be determined based on the good faith or bad faith of the bankruptcy administrator alone, and unless all bankruptcy creditors are in bad faith based on the total bankruptcy creditors, the bankruptcy administrator should be deemed a third party in good faith. (see Supreme Court Judgment 2009 Da 96083 decided April 29, 2010). Therefore, even if the true intention of the Defendant was not consistent with the declaration, or Tomato Savings Bank, Co., Ltd. or the Defendant shared the understanding described above, the Defendant cannot assert such facts against the Plaintiff, who is the bankruptcy administrator for Tomato Savings Bank, Co., Ltd., barring evidence to hold that all bankruptcy creditors knew about the circumstances. Therefore, this court finds the Defendant's argument baseless.

B) Regarding the argument that the Loan Agreement constitutes an unfair juristic act, the unfair juristic act stipulated under Article 104 of the Civil Act is established when there exists an objective imbalance between a payment and a consideration, and such a transaction that lacks balance was conducted by exploiting the strained circumstances, rashness, or inexperience of the victimized party, and there is no evidence to hold that there exists an objective imbalance between the payment and the consideration under the Loan Agreement, or the Defendant entered into the agreement in the state of strained circumstances, rashness, or inexperience (the Defendant does not provide any argument or proof about the requirements for the unfair juristic act). Thus, this court finds the Defendant's argument baseless.







www.scourt.go.kr

Barcode for document reader

**2) Judgment on the Argument That the Principal and Interest Were Erroneously Calculated**

**A) Arguments of the Defendant**

KRW 300,000,000 of the loans under the Loan Agreement was wire-transferred for subscribing for the new shares of Taurus Investment and Securities, Co., Ltd., and KRW 200,000,000 of the loans is kept on the Plaintiff's accounting ledgers and remains in the bankbook of the Defendants as numbers in her account only (the so-called "circulatory loan"). As the Plaintiff appropriated the amount to satisfy the principal and interest, the Plaintiff's calculation of the principal and interest is erroneous as it presupposes that the KRW 500,000,000 was loaned to the Defendant.

**B) Judgment**

Given Exhibit Gap No. 13, Exhibit Eul No. 23, and the overall gist of the pleadings, on May 15, 2018, KRW 300,000,000 and KRW 150,000,000 were withdrawn from the account created in the Defendant's name under the Loan Agreement (319-01-13-2146202) (the slip requesting the withdrawal bears the seal impression of the Defendant), and KRW 300,000,000 of the said amount was wire transferred to Bok Jo Son (the representing founder of Taurus Investment and Securities), and there is no record to hold that the KRW 200,000,000 was loaned as a "circulatory loan" as argued by the Defendant (the Defendant seems to be of the position that, on the premise that the loan amount under the Loan Agreement is KRW 500,000,000, the amount remaining after the transfer of KRW 300,000,000 was loaned as a circulatory loan. However, the Loan Agreement is for a comprehensive bankbook loan with a limit of KRW 500,000,000, and the amount withdrawn on May 15, 2018, was KRW 450,000,000. In addition, given the representation on the slip, it seems to have been withdrawn out of the Defendant's volition). For these reasons, this court does not accept the Defendant's claim.

**4. Conclusion**





www.scourt.go.kr



Barcode for document reader

Then, this court revokes the first-instance judgment as it is based on unlawful procedures, accepts the Plaintiff's claims in this case, and judges as indicated in the Order above.

| Presiding Judge | Judge | Dong Sik Lee | 이 동 식 |
| | Judge | Seo Yeong Cho | 조 서 영 |
| | Judge | Yu Ri Shin | 신 유 리 |







Barcode for document reader

# This is an Authentic Copy.

February 5, 2021

Suwon District Court

Assistant Officer of the Court Ji Yeong Seon 



In cases where there is any dissatisfaction with the judgment, an appeal should be filed with this court (Suwon District Court) in accordance with the Civil Procedure Act and other applicable laws within two weeks from the date of receipt of this authentic copy (for those who serve such a copy, the date of service) (It shall be noted that such period is calculated by deeming a person in whose favor the intervention as a subject when there is a supplementary participant under Article 71 of the Civil Procedure Act to be involved with the procedure).

※ You can verify whether this document is a counterfeit or has been falsified by using the Issuance No.

Search menu at the case search computers placed at the public service center in each court, or inquiring to the bench presiding over your case about the issuance no. indicated at the bottom of this document.





www.scourt.go.kr

Barcode for document reader

# Execution Clause

Case:     Suwon District Court Seongnam Branch 2013 Ga Dan 34692 [Electronic Litigation] Loans
          Suwon District Court 2018 Na 54323 [Electronic Litigation] Loans

This authentic copy is being provided once again to Plaintiff (Appellee), Korea Deposit Insurance Corporation (114671-0021454), Bankruptcy Administrator for Bankrupt Tomato Savings Bank Co., Ltd. to implement compulsory execution against Defendant (Appellant) DEBBIE A SUH (791007-6100799) by order of the Judicial Assistant Official.

July 5, 2021

Supreme Court

Court Official          In Gwon Jeon    



◇ Caution ◇

1.  This execution clause may not be used separately from the authentic copy of the judgment (decision).
2.  In cases where the execution clause has been misplaced, it can only be reissued with the order of the presiding judge (or judicial assistant official) (Civil Execution Act, Article 35(1) and Court Organization Act, Article 54(2)). Please note that, in such a case, the requester is required to offer an explanation for the misplacement and pay the relevant costs.
3.  In cases where the execution clause has been used, it can only be reissued with the order of the presiding judge (or judicial assistant official) (Civil Execution Act, Article 35(1) and Court Organization Act, Article 54(2)). Please note that, in such a case, the requester is required to provide a certificate proving the use of the execution clause and pay the relevant costs.
4.  If the resident registration numbers of the creditors and obligors (for persons without resident registration numbers, their passport or registration numbers; for corporations, noncorporation associations, and foundations, their business registration, taxpayer, or identification numbers; hereinafter the "resident registration numbers, etc.") are not indicated in the executive title, please write the resident registration numbers, etc. of the creditors and obligors.







2021. 02. 05

# 수 원 지 방 법 원

## 제 8 민 사 부

## 판             결

| | |
|---|---|
| 사          건 | 2018나54323  대여금 |
| 원고, 피항소인 | 파산자 주식회사 토마토저축은행의 파산관재인 예금보험공사 |
| | 서울 중구 청계천로 30 (다동, 예금보험공사) |
| | 대표자 사장 김주현 |
| | 소송대리인 법무법인 자유라이프 |
| | 담당변호사 박기혁, 이성호 |
| 피고, 항소인 | 서데비아(DEBBIE A SUH, 한국명 : 서현주) |
| | 미국 캘리포니아주 샌프란시스코시 킹스트리트 88, 아파트 1321호 |
| | (88 KING ST APT 1321, SAN FRANCISCO, CA 94107, U.S.A) |
| | 소송대리인 변호사 하광호 |
| 제 1 심 판 결 | 수원지방법원 성남지원 2013. 11. 21. 선고 2013가단34692 판결 |
| 변 론 종 결 | 2021. 1. 21. |
| 판 결 선 고 | 2021. 2. 4. |

## 주        문

1. 제1심판결을 취소한다.





2. 피고는 제1심 공동피고 서정선과 연대하여 원고에게 956,166,827원 및 그중 470,576,109원에 대하여 2013. 6. 18.부터 다 갚는 날까지 연 25%의 비율로 계산한 돈을 지급하라.

3. 소송 총비용은 피고가 부담한다.

4. 제2항은 가집행할 수 있다.


### 청구취지 및 항소취지

[청구취지]

피고는 제1심 공동피고 서정선(이하 '서정선'이라고만 한다)과 연대하여 원고에게 956,166,827원 및 그중 470,576,109원에 대하여 2013. 6. 18.부터 다 갚는 날까지 연 25%의 비율로 계산한 돈을 지급하라.

[항소취지]

제1심판결 중 피고에 대한 부분을 취소한다. 원고의 피고에 대한 청구를 기각한다.


### 이        유

1. 기초사실

가. 주식회사 토마토저축은행은 자금의 대출업무 등을 목적으로 하여 설립된 상호저축은행으로 2012. 8. 31. 수원지방법원 2012하합23호로 파산선고를 받았고, 같은 날 원고가 파산관재인으로 선임되었다(이하 구분이 필요한 경우를 제외하고는 주식회사 토마토저축은행과 원고를 봉틀어 '원고'라고만 한다).

나. 원고와 피고(미국 국적, 당시 국내 거주) 사이에, 여신과목 종합통장대출, 거래구




분 한도거래, 여신한도금액 500,000,000원, 여신개시일 2008. 5. 15., 여신기간만료일 2009. 5. 15., 이자율 연 12%, 지연배상금률 연 25%로 하는 여신거래약정서가 작성되었는데(이하 '이 사건 여신거래약정서'라고 하고, 이에 따른 약정을 '이 사건 여신거래약정'이라 한다), 이 사건 여신거래약정서 우측 상단에는 '2008. 05. 15.'라고 기재된 고무인이 날인되어 있다.

다. 이 사건 여신거래약정서 작성 당시 피고 명의의 확약서 및 질권설정계약서, 처분승낙서가 작성되었고, 확약서에는 '상기 당사자는 귀행에 토러스투자증권에 대한 청약금 대출용도로 대출금을 요청하고, 토러스투자증권 설립시 청약주식에 대해 질권설정 및 담보제공할 것을 확약한다'는 취지로 기재되어 있다.

라. 피고의 아버지인 서정선은 당시 원고에게 이 사건 여신거래약정에 따른 피고의 채무를 750,000,000원의 한도 내에서 연대보증하였다.

마. 2013. 6. 17.을 기준으로 한 이 사건 여신거래약정에 따른 원리금[1] 및 가지급금[2]은 다음 표 기재와 같이 합계 956,166,827원이다.

| 원금 | 이자(지연배상금) | 가지급금 | 합계 |
|---|---|---|---|
| 470,576,109원 | 485,133,518원 | 457,200원 | 956,166,827원 |

---

[1] 이 사건 여신거래약정서 제5조 제1항은 '이 약정에 의한 채무가 있는 때에는 종합통장기본계좌(이하 '모계좌'라고 합니다)에 입금된 자금은 자동적으로 대출금변제에 충당하기로 합니다'고 되어 있고, 같은 조 제4항은 '이자 및 지연배상금은 모계좌에서 빼거나 제3조의 한도금액 초과여부에 불구하고 대출금에 더하기로 하며, 이 경우 한도를 초과한 금액은 곧 갚기로 합니다'고 규정하고 있으며, 제2조 제2항은 '여신기간 만료일에 채무를 이행하지 아니하거나, 상호저축은행여신거래기본약관 제7조에 의하여 기한의 이익을 상실한 때에는 그때부터 여신잔액에 대하여 곧 지연배상금을 지급하기로 합니다'라고 규정하고 있다. 이 사건 여신기간만료일 직후인 2009. 6. 2.까지 이 사건 여신거래약정에 따라 개설된 계좌(319-01-13-2146202)에서 입출금(피고가 납부하지 않아 출금된 이자 내지 지연배상금 포함)을 통하여 남은 금액은 488,704,683원이고, 여기에서 원고가 2011. 7. 27. 토러스투자증권 배당금 수령을 통하여 회수한 18,128,574원을 공제한 나머지는 470,576,109원이므로, 지연배상금을 붙일 수 있는 원금잔액의 의미를 가지는 원금은 470,576,109원이다.

[2] 이 사건 여신거래약정서 제1쪽에는 '본인(피고)은 원고와 아래의 조건에 따라 여신거래를 함에 있어 상호저축은행여신거래기본약관이 적용됨을 승인한다'는 취지로 기재되어 있고, 상호저축은행여신거래기본약관 제4조 제1항 제1호는 '채무자는 채무불이행에 따라 발생하는 채무자·보증인 또는 물상보증인에 대한 저축은행의 채권·담보권 등의 권리의 행사나 보전(가압류 또는 가처분(그 해지도 포함) 등을 말함)에 관한 비용을 부담한다'는 취지로




【인정근거】다툼 없는 사실, 갑 제1 내지 5, 8 내지 10, 13, 15 내지 19호증[피고는 갑 제1호증(여신거래약정서, 갑 제15호증과 동일 문서)이 위조되었다고 항변하나, 아래 3항에서 보는 바와 같이 그 진정성립이 인정된다. 나아가 피고는 갑 제9호증(질권설정계약서), 갑 제10호증의 1(처분승낙서), 갑 제10호증의 2(확약서) 역시 위조되었다는 취지로 항변하는 것으로 보이나, 위 각 문서에 날인된 인영이 피고의 인감도장에 의한 것임은 갑 제8호증의 영상, 당심 증인 서정선의 증언 및 변론 전체의 취지를 종합하여 인정할 수 있으므로, 문서 전체의 진정성립이 추정되며, 아래 3항에서 보는 사정들에 비추어 보면 피고가 제출한 증거들만으로는 위 각 문서가 위조되었다고 보기 어렵다. 이하 가지번호에 관한 언급이 없는 경우 가지번호가 있는 것은 가지번호를 포함한다], 을 제2호증의 각 기재, 당심 증인 서정선의 일부 증언, 변론 전체의 취지

2. 이 사건 항소의 적법 여부에 관한 판단

가. 원고의 주장



제1심판결 정본은 피고의 아버지인 서정선에게 2013. 11. 27. 적법하게 송달되었고, 피고는 서정선을 통하여 이 사건 소제기 사실이나 제1심판결의 선고사실을 알고 있었다. 설령 피고가 당시 그러한 사실을 알지 못하였다 하더라도, 원고는 피고를 상대로 미국 법원에 제1심판결에 대한 승인의 소를 제기하였고, 피고는 2015. 1. 6. 위 소송과정에서 제1심판결 정본을 송달받음에 따라 제1심판결의 선고사실을 알게 되었다 할 것이므로, 피고의 추완항소는 그로부터 30일이 경과한 이후에 제기된 것으로서 부적법하다.

나. 판단

규정하고 있으므로, 피고는 원고가 이 사건 여신거래약정에 따른 채권의 행사 및 보전에 관하여 지출한 비용을 지급할 의무가 있다. 한편 원고는 피고가 여신기간만료일까지 원리금을 상환하지 아니하자 2012. 5. 11.부터 2013. 5. 27.까지 사이에 가압류, 공정증서 승계집행문 관련 비용으로 합계 457,200원을 지출하였으므로, 피고는 원고에게 가지급금 457,200원을 지급할 의무가 있다.





1) 인정사실

가) 원고는 2013. 6. 20. 피고 및 서정선을 상대로 지급명령(수원지방법원 성남지원 2013차3020)을 신청하였는데, 당시 원고가 제출한 지급명령신청서의 채무자란에는 피고의 주소로 '서울 영등포구 63로 40-0 라이프오피스텔(이하 '이 사건 오피스텔'이라 한다) 1313호'가, 서정선의 주소로 '이 사건 오피스텔 1207호'가 기재되어 있다.

나) 제1심법원은 2013. 7. 4. '피고 및 서정선은 연대하여 원고에게 956,166,827원 및 그중 470,576,109원에 대하여 2013. 6. 18.부터 다 갚는 날까지 연 25%의 비율로 계산한 돈을 지급하라. 단 서정선은 근보증한도 750,000,000원의 한도 내에서 지급하라'는 지급명령을 하였고, 2013. 7. 5. 피고 및 서정선에 대하여 위 각 주소로 지급명령 정본의 송달을 실시하였으나, 2013. 7. 11. 수취인불명으로 송달되지 아니하였다.

다) 이에 제1심법원은 2013. 7. 17. 원고에 대하여 주소보정명령을 하였고, 원고는 2018. 8. 1. 피고 및 서정선의 주소를 모두 '이 사건 오피스텔 1306호'로 보정하였다(보정서에 첨부된 피고 및 서정선의 국내거소신고 사실증명원에는 피고 및 서정선의 거소가 소장 기재 주소와 동일하게 기재되어 있다).

라) 제1심법원은 2013. 8. 9. 위 주소지로 지급명령 정본의 송달을 실시하였는데 ㉠ 피고에 대하여는 2013. 8. 16. 위 주소지에서 서정선이 서무계원으로 송달을 받았고, ㉡ 서정선에 대하여는 2013. 8. 16. 수취인불명으로 송달되지 아니하였다.

마) 서정선은 2013. 8. 26. 제1심법원에 피고 및 서정선 연명으로 된 이의신청서를 제출하였고(위 이의신청서의 채무자란에는 피고 및 서정선의 주소가 소장 기재 주소와 동일하게 기재되어 있다), 이에 따라 위 지급명령 신청사건은 소송절차(수원지방법원 성남지원 2013가단34692)로 이행되었다.





바) 제1심법원은 2013. 10. 1. 이 사건 오피스텔 1306호로 피고 및 서정선에 대한 변론기일 통시서의 송달을 실시하여 2013. 10. 10. 도달되었다[서정선은 위 주소지에서 피고에 대하여는 본인 주소, 거소의 동거인(부)로서, 자신에 대하여는 본인으로서 변론기일 통지서를 수령하였다].

사) 제1심 법원은 2013. 11. 7. 원고만이 출석한 상태에서 변론기일을 진행하고 변론을 종결한 다음, 같은 날 이 사건 오피스텔 1306호로 피고 및 서정선에 대한 판결선고기일 통지서의 송달을 실시하여 2013. 11. 11. 도달되었다(서정선은 위 주소지에서 피고에 대하여는 본인 영업소, 사무소의 사무원 또는 피용자로서, 자신에 대하여는 본인으로서 판결선고기일 통지서를 수령하였다).

아) 제1심 법원은 2013. 11. 21. 원고 승소판결을 선고한 후 2013. 11. 25. 이 사건 오피스텔 1306호로 제1심판결 정본의 송달을 실시하여 2013. 11. 27. 도달되었다[서정선은 위 주소지에서 피고에 대하여는 본인 주소, 거소의 동거인(부)로서, 자신에 대하여는 본인으로서 제1심판결 정본을 수령하였다].

자) 한편 원고는 2014. 12. 5. 미국 캘리포니아주 리버사이드 카운티 지방법원(SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE, 이하 '이 사건 미국법원'이라 한다)에 피고를 상대로 제1심판결에 대한 승인판결(Recognition of the Foreign-Country Judgment) 등을 구하는 소를 제기하였는데(이하 '이 사건 미국소송'이라 한다), 이 사건 미국법원은 피고의 미국 수소지로 소환장 및 제1심판결 성본과 이에 대한 번역본 등이 포함된 관련 서류의 송달을 실시하였고, 피고는 2015. 1. 6. 이를 모두 수령하였다.

차) 이 사건 미국법원은 2016. 7. 27. 원고 승소판결을 선고하였고, 피고는 2016.





9. 20. 이에 대하여 항소한 다음, 그와는 별노로 2016. 12. 7. 제1심법원에 제1심판결에 대한 항소상을 제출하였나.

【인정근거】기록상 명백하거나 다툼 없는 사실, 갑 제6, 7, 12호증, 을 제5 내지 10호증의 각 기재, 변론 전체의 취지

   2) 판단

   가) 관련 법리

   (1) 송달은 원칙으로 민사소송법 제170조 제1항에서 정하는 송달을 받을 자의 주소, 거소, 영업소 또는 사무실 등의 '송달장소'에서 하여야 하는바, 송달장소인 '주소'란 생활의 근거가 되는 곳으로서 동시에 두 곳 이상 있을 수 있고(민법 제18조), 생활의 근거되는 곳이란 생활관계의 중심적 장소를 말하며, 이는 생계를 같이하는 가족 및 자산의 유무 등 생활관계의 객관적 사실에 따라 판단하여야 하며(대법원 1990. 8. 14. 선고 89누8064 판결 등 참조), 거소란 생활의 근거가 될 정도에는 이르지 못하지만 상당 기간 계속하여 거주하는 장소를 말한다. 한편 송달장소에서 송달받을 자를 만나지 못한 때에는 그 사무원, 고용인 또는 동거자로서 사리를 변식할 지능 있는 자에게 서류를 교부하는 보충송달의 방법에 의하여 송달할 수는 있지만, 이러한 보충송달은 위 법 조항에서 정하는 '송달장소'에서 하는 경우에만 허용되고, 송달장소가 아닌 곳에서 사무원, 고용인 또는 동거자를 만난 경우에는 그 사무원 등이 송달받기를 거부하지 아니한다 하더라도 그 곳에서 그 사무원 등에게 서류를 교부하는 것은 보충송달의 방법으로서 부적법하다(대법원 2001. 8. 31. 자 2001마3790 결정).

   (2) 항소는 판결서가 송달된 날부터 2주 이내에 하여야 하고(민사소송법 제396조 제1항 본문), 그 기간은 불변기간이나(같은 조 제2항), 제1심의 판결 정본이 적법하게




송달되시 아니하였다면 그 판결에 대한 항소기간은 진행하지 아니하므로 그 판결은 형식적으로도 확정되었다고 볼 수 없고, 따라서 소송행위 추후보완의 문제는 생기지 아니하며, 그 판결에 대한 항소는 제1심 판결정본 송달 전에 제기된 것으로서 적법하다(대법원 1994. 12. 22. 선고 94다45449 판결, 대법원 1997. 5. 30. 선고 97다10354 판결 등 참조). 또 불변기간인 항소제기기간에 관한 규정은 성질상 강행규정이므로 그 기간 계산의 기산점이 되는 판결 정본 송달의 하자는 당사자의 이의권 상실 등으로 그 하자가 치유된다고 볼 수도 없다(대법원 1972. 5. 9. 선고 72다379 판결, 대법원 1979. 9. 25. 선고 78다2448 판결 참조).

　나) 구체적인 판단

　(1) 피고에 대하여 제1심판결 정본이 적법하게 송달되었는지 여부

　(가) 2013. 11. 27. 국내 송달 부분 

　　제1심법원이 2013. 11. 21. 원고 승소판결을 선고한 후 2013. 11. 25. 피고에 대하여 이 사건 오피스텔 1306호로 제1심판결 정본의 송달을 실시하였고, 서정선이 2013. 11. 26. 위 주소지에서 피고에 대하여 주소, 거소의 동거인(부)로서 제1심판결 정본을 송달받은 사실은 앞서 본 것과 같다. 그런데 송달은 원칙적으로 송달을 받을 자의 주소, 거소, 영업소 또는 사무실 등의 '송달장소'에서 행해져야 하는바, 제1심법원이 제1심판결 정본을 송달한 이 사건 오피스텔 1306호가 피고의 주소·거소·영업소·사무소 등의 '송달장소'에 해당한다고 볼 만한 아무런 증거가 없으므로(피고는 미국 국적자로 2013. 11.경 미국에 거주하고 있었고, 피고가 2011. 8. 1. 신고한 국내거소 또한 위 주소지가 아닌 이 사건 오피스텔 1313호이며, 달리 이 사건 오피스텔 1306호가 피고가 국내 입국시 상당기간 계속하여 거주하는 거소에 해당한다고 볼 만한 자료가 없다), 제




1심법원이 2013. 11. 27. 송달장소가 아닌 이 사건 오피스텔 1306호로 제1심판결 정본을 송달한 것은 부적법하여 그 효력이 없다(앞서 본 것과 같이 이 사건 오피스텔 1306호가 피고의 송달장소에 해당하지 않는 이상, 송달장소가 아닌 이 사건 1306호에서 피고의 아버지인 서정선이 제1심 판결정본을 송달받았다 하더라도 이는 보충송달의 방법으로서 부적법하므로 그 효력이 없다. 한편 원고는 이 사건 미국소송의 경과 등을 고려하여 볼 때 피고는 제1심판결의 선고사실을 잘 알고 있었고 서정선을 통하여 제1심판결 정본도 전달받았을 가능성이 있다고 주장하나, 설령 피고가 서정선을 통하여 제1심판결 정본을 전달받았다 하더라도 이를 적법한 송달이라 할 수 없고, 제1심판결 정본 송달에 관한 하자는 당사자의 이의권 포기나 상실로 인하여 치유된다고 볼 수도 없다).

　　(나) 2015. 1. 6. 미국 송달 부분

　　　원고가 2014. 12. 5. 이 사건 미국법원에 피고를 상대로 이 사건 미국소송을 제기하였고, 피고는 위 소송과정에서 2015. 1. 6. 제1심판결 정본이 포함된 관련 서류를 송달받은 사실은 앞서 본 것과 같다. 그러나 송달이란 재판권의 작용으로 행하는 명령적·공증적 통지행위로서 법원이 재판에 관한 서류를 법정의 방식에 따라 당사자 기타 소송관계인에게 교부하여 그 내용을 알리거나 알 수 있는 기회를 부여하고 이를 공증하는 행위를 말하는 것으로, 민사소송법 제174조는 송달은 이 법에 특별한 규정이 없으면 법원이 직권으로 한다고 규정하고 있고, 국제민사사법공조법 제5조에 의하면, 외국으로의 송달촉탁은 수소법원의 재판장이 그 외국의 관할법원 기타 공무소에 대하여 하되, ㉠ 외국으로의 촉탁을 하고자 하는 재판장이 속하는 법원의 장이 법원행성처장에게 촉탁서 기타 관계서류를 송부할 것을 요청하여야 하고, ㉡ 법원행정처장은 외교




부장관에게 촉탁시 기타 관계서류를 외교상의 경로를 통하여 수탁기관으로 송부할 것을 의뢰하는 방법을 통하여 이루어져야 한다. 위와 같은 민사소송법, 국제민사사법공조법의 각 규정의 취지와 직권송달주의를 취하고 있는 우리나라 민사소송법제에 비추어 볼 때, 제1심법원이 위와 같은 절차를 통하여 외국으로 제1심판결 정본의 송달을 촉탁한 것이 아니라, 단순히 외국법원이 관련 소송과정에서 피고에게 소송 관련 서류의 하나로서 제1심판결 정본을 송달한 것을 두고 민사소송법상의 적법한 송달이 실시되었다고 볼 수는 없다. 따라서 이 사건 미국소송 과정에서 피고에게 제1심판결 정본이 적법하게 송달되었다고 보기는 어렵다.

(2) 항소기간이 개시되는지 여부

따라서 제1심판결 정본은 피고에게 적법하게 송달되지 아니하였으므로 그에 대한 항소기간은 진행하지 아니하고, 피고의 항소는 제1심 판결정본 송달 전에 제기된 것으로서 적법하다.

나아가 제1심법원은 피고에 대하여 지급명령 정본을 비롯한 모든 소송서류를 피고의 송달장소가 아닌 이 사건 오피스텔 1306호로 송달하였는바, 이는 소송서류를 적법하게 송달하지 않은 채 판결을 선고한 것이므로, 이는 제1심판결의 절차가 법률에 어긋나는 경우에 해당한다. 따라서 이 법원은 민사소송법 제417조에 의하여 제1심판결 전부를 취소하고 지급명령신청서 진술을 비롯하여 소송서류의 송달과 증거의 제출 등 모든 변론절차를 새로 진행한 다음 본안에 대하여 아래와 같이 다시 판단하기로 한다 (대법원 2004. 10. 15. 선고 2004다11988 판결 등 참조).

3. 본안에 관한 판단

가. 당사자의 주장 요지




1) 원고의 주장

피고는 이 사건 여신거래약정에 따라 원고에게 원리금 및 가지급금 합계 956,166,827원 및 그중 원금 470,576,109원에 대한 지연손해금을 지급할 의무가 있다.

2) 피고의 주장

피고는 이 사건 여신거래약정을 체결한 사실이 없는바, 이 사건 여신거래약정서상 피고의 서명은 위조된 것이고, 그 옆에 날인된 피고의 인감도장 역시 피고의 의사에 기하여 날인된 것이 아니므로[3], 원고의 청구에 응할 수 없다.

나. 청구원인에 관한 판단

1) 이 사건 여신거래약정서의 형식적 증거력(진정성립)의 인정 여부

가) 관련 법리

사문서에 본인의 서명이나 날인 또는 무인이 있는 때에는 그 문서의 진정성립이 추정되고(민사소송법 제358조), 이러한 서명, 날인, 무인은 그중 어느 하나만 있어도 족하다. 특히 사문서에 날인된 작성명의인의 인영이 그의 인장에 의하여 현출된 것이라면 특단의 사정이 없는 한 그 인영의 진정성립, 즉 날인행위가 작성명의인의 의사에 기한 것이 추정되고, 일단 인영의 진정성립이 추정되면 민사소송법 제358조에 의하여 그 문서 전체의 진정성립이 추정되는 것이고, 위와 같은 추정은 그 날인행위가 작성명의인 이외의 사람에 의하여 이루어진 것임이 밝혀지거나 작성명의인의 의사에 반하여 혹은 작성명의인의 의사에 기하지 않고 이루어진 것임이 밝혀진 경우에는 깨어지는 것이므로, 문서가 위조된 것임을 주장하는 자는 적극적으로 위 인영이 명의인의 의

---

3) 피고는 이 사건 여신거래약정서상의 서명이 본인의 서명이 아니라는 취지로만 주장할 뿐, 그 옆의 인영에 대하여는 본인의 인감도장에 의한 것임을 인정하면서 명시적인 주장을 하고 있지 않으나, 피고의 전체적인 주장 취지에 비추어 피고가 그 의사에 기하여 인감도장을 날인한 것이 아니라는 취지의 주장으로 선해한다.




사에 반하여 날인된 것임을 증명할 필요가 있고, 이 항변사실을 증명하는 증서의 증명력은 개연성만으로는 부족하다[대법원 2020. 2. 6. 선고 2019다275977(본소), 2019다275984(반소) 판결 참조].

　　나) 구체적인 판단

　　(1) 이 사건 여신거래약정서 본인란의 "SUH DEBBIE A(서 데비아)"라는 서명 옆에 날인된 피고의 인영이 피고의 인감도장에 의하여 현출된 것이라는 사실은 당사자 사이에 다툼이 없거나, 갑 제1, 8, 15호증의 각 기재 내지 영상, 당심 증인 서정선의 증언 및 변론 전체의 취지를 종합하여 인정할 수 있으므로, 특별한 사정이 없는 한 그 인영은 피고의 의사에 기하여 날인된 것으로 추정되고, 인영의 진정성립이 추정되는 이상 이 사건 여신거래약정서 전체의 진정성립이 추정된다.

　　(2) (가) 이에 대하여 피고는, 이 사건 여신거래약정서가 작성된 2008. 5. 15. 오전 10:00경 인도네시아 발리로 출국하였으므로 그 날인행위가 피고 이외의 사람에 의하여 이루어진 것이라는 취지로 다투므로 살피건대, 이 사건 여신거래약정서 우측 상단에는 '2008. 05. 15.'라고 기재된 고무인이 날인되어 있는 사실은 앞에서 본 것과 같고, 을 제2, 12, 27호증의 각 기재에 의하면 피고가 2008. 5. 15. 인도네시아 발리로 출국한 사실이 인정되기는 한다.

　　(나) 그러나 갑 제1, 8, 15, 20호증의 각 기재, 이 법원의 감정인 양후열에 대한 감정촉탁결과 및 변론 전체의 취지를 종합하여 인정할 수 있는 다음과 같은 사정들에 의하면, 피고가 제출한 증거들만으로는 이 사건 여신거래약정서에 날인된 피고의 인영이 피고의 의사에 반하여 날인되었다고 인정하기 부족하고, 달리 이를 인정할 만한 증거가 없다. 따라서 피고의 위 주장은 받아들일 수 없다.



① 먼저 이 사건 여신거래약정서 우측 상단에 '2008. 05. 15.'라고 기재된 고무인이 날인되어 있기는 하나, 당시 일부 상호저축은행은 대출신청 이후 심사 및 승인을 거쳐 실제 대출이 실행되기까지 시간이 소요되는 점을 고려하여 대출실행 전에 미리 여신거래약정서 및 관련 서류에 대출신청인의 날인을 받아 작성하여 두고 실제 대출실행일에 작성일자를 추가하는 경우가 빈번하였던 것으로 보이는바, 이 사건 여신거래약정서 역시 그러한 관행에 따라 대출실행일인 2008. 5. 15. 당일이 아니라 그 이전에 작성되었을 것으로 보인다(이 사건 여신거래약정서를 비롯한 관련 서류 중 '년 월 일'란만 유독 고무인으로 압날되어 있는 점 또한 해당 서류의 일자가 대출실행일에 맞추어 일률적으로 기재되었을 가능성을 뒷받침한다).

② 이 사건 여신거래약정서에는 피고가 2008. 5. 8. 직접 발급받은 본인의 인감증명서 및 여권 사본이 첨부되어 있고(이에 대하여 피고는 서정선의 요청에 따라 인감증명서를 발급받아 그 사용목적을 묻지 않은 채 서정선에게 교부하였을 뿐이라고 주장하나, 피고의 인감도장이 날인된 경위에 관하여는 납득할 만한 해명을 하지 못하고 있다), 특히 본인확인/인감대조'란에는 그와 같은 조치를 시행하였다는 취지가 담긴 담당직원의 확인도장이 날인되어 있다.

③ 구 금융실명거래 및 비밀보장에 관한 법률(2008. 2. 29. 법률 제8863호로 개정된 것)은 금융기관은 거래자의 실지명의로 금융거래를 하여야 한다고 규정하고 있고(제3조 제1항), 이에 위반한 금융기관의 임원 및 직원에 대하여는 500만 원 이하의 과태료에 처하도록 하고 있다(제7조 제1항). 또한 같은 법 시행령은 외국인의 실지명의에 관하여 '출입국관리법에 의한 등록외국인기록표에 기재된 성명 및 등록번호. 다만 외국인등록증이 발급되지 아니한 자의 경우에는 여권 또는 신분증에 기재된 성명 및 번호





'에 의하도록 규정하고 있고(제3조 제4호), 같은 법 시행규칙(2014. 12. 5. 총리령 제

1110호로 개정되기 전의 것)은 실명거래의 확인과 관련하여 외국인의 경우 외국인등록

증·외국인단체등록증 또는 여권·신분증에 의하여 확인하도록 규정하고 있다(제3조 제4

호).

　　이 사건 여신거래약정서에는 외국인인 피고의 성명이 여권상의 성명인 "SUH

DEBBIE A(서 데비아)"로 기재되어 있고, 피고의 여권 사본이 첨부되어 있는바, 이에

따르면 원고의 담당직원이 이 사건 여신거래 당시 외국인 피고에 대하여 당시 관계

법령에 따라 여권 등을 통하여 실명거래의 확인절차 등을 거쳤다고 봄이 합리적이다

(피고는 평소 '서현주' 혹은 'Debbie A Suh'라는 성명을 사용하여 왔음에도 이 사건 여

신거래약정서에 그 성명이 'SUH DEBBIE A(서 데비아)'로 기재되어 있는 점이 이상하

다는 취지로 주장하나, 이는 위와 같은 관계 법령에 따라 여권에 기재된 실지명의를

기재하기 위한 것으로 보인다).

　　④ 한편 피고는 이 사건 여신거래약정서 본인란의 "SUH DEBBIE A(서 데비

아)"라는 서명이 본인의 필적이 아니므로 이 사건 여신거래약정서가 위조되었다는 취

지로 주장하나, 앞서 본 바와 같이 사문서의 서명, 날인, 무인은 그중 어느 하나만 있

어도 진정성립을 인정할 수 있는 것으로 위 서명 옆에 날인된 피고의 인영이 피고의

인감도장에 의하여 현출된 이상 이 사건 여신거래약정서 전체의 진정성립이 추정되고,

다만 위 서명이 위조된 것임이 분명하다면 그 옆에 날인된 인영 역시 작성명의인이 아

닌 다른 사람에 의하여 이루어졌을 기능성이 높다 할 것이다. 그러나 피고가 이를 뒷

받침하기 위하여 제출한 을 제13호증(감정서, 이 사건 여신거래약정서의 위 서명이 피

고의 필적과는 상이한 필적으로 추정된다는 내용임)은 민사소송법이 규정하는 감정절





차에 따른 것이 이니리 피고가 소송절차 외에서 의뢰하여 제출받은 이른바 사감정(私鑑定) 결과에 해당하여 법원에 의한 감독, 당사자에 대한 공개 및 참가, 허위감정에 대한 제재 등 내용의 공정성과 객관성을 담보할 수 있는 적절한 요건을 갖추고 있지 아니하여 이를 그대로 믿기 어렵다.

한편 이 법원의 필적감정촉탁에 답변한 감정인 양후열은 이 사건 여신거래약정서의 서명 중 한글 부분(서 데비아)에 관하여는 대조자료(서현주)와 비교하여 볼 때, 문자의 균형과 조화성, 숙련정도, 운필 상태에서 공통된 유사점과 일부 필순과 각도, 분기점에서 유사성이 관찰되는 반면 일부 자획의 각도와 이격에서는 차이점이 관찰되고, 이러한 유사성이 동일한 필적에 대한 것인지 대조 분석할 문자가 부족하여 필적의 이동 여부에 대한 논단이 어렵다는 의견을 밝혔고, 영문 부분(SUH DEBBIE A)에 관하여도 대조자료(Debbie A Suh)와 비교하여 볼 때, 문자의 균형과 조화성, 숙련정도 등 운필에서는 상호 유사성을 볼 수 있으며 특히 동일한 내문사인 D사의 제2획 시작점과 종필처리 부분이 제1획을 첨범하여 기재하는 습성, S자 구성과 각도, A자 제1획과 제2획 상단부분의 분기점과 각도, 제3획은 우측방향으로 벗어난 자획의 기재습성에서는 상호 공통점이 관찰되나, 일부 자획형태에서 차이점도 관찰되므로 대조자료가 부족하여 차이점이 상이한 필적에 대한 것인지, 아니면 필기시 제반 상황과 심리적인 요인 등에 따른 변화에 따른 것인지 여부를 정확히 판단하기 어려워 필적의 이동 여부에 관하여 논단하기 어렵다는 의견을 밝혔다. 이처럼 위 감정인의 의견은 비교가능한 글자가 제한적이어서(한글부분 '서', 영문부분 'S, D, A') 동일성 여부 논단이 불가능하나는 유보적인 판단을 내린 것에 불과하고, 특히 영문 부분(SUH DEBBIE A) 서명과 관련하여는 대조자료 중 위 서명과 동일하게 대문자로 기재되어 있는 부분(S, D, A)의 자획



구성요소에서 모두 유사성이 관찰된다는 것이므로, 이를 들어 이 사건 여신서래약성서의 피고 서명이 위조되었다고 단정하기는 어렵다.

⑤ 피고의 아버지인 서정선은 이 법원에 증인으로 출석하여 '피고에게는 이 사건 여신거래약정 체결 사실을 알리지 아니하였고, 내가 피고의 인감도장을 보유하고 있다가 원고의 직원에게 교부하여 이 사건 여신거래약정서에 날인하도록 하였다'는 취지로 증언하였으나, 이 사건 여신거래약정서에 피고의 여권 사본 등이 첨부된 경위에 관하여는 구체적인 해명을 하지 않은 점, 서정선은 당초 지급명령에 대하여 이의신청을 하면서 '피고가 이름을 빌려 주었다'는 취지로 주장하였을 뿐, 본인이 피고의 의사에 반하여 인감도장을 도용하는 등으로 이 사건 여신거래약정을 체결하였다는 취지로 다투지는 아니하였던 점 등에 비추어 보면 그 증언내용을 그대로 믿기 어렵다.

2) 이 사건 여신거래약정에 따른 대출금 지급의무의 발생 여부

처분문서는 그 성립의 진정함이 인정되는 이상 법원은 그 기재 내용을 부인할 만한 분명하고도 수긍할 수 있는 반증이 없으면 처분문서에 기재된 문언대로 의사표시의 존재와 내용을 인정하여야 하는바(대법원 2019. 2. 14. 선고 2018다275727 판결 등 참조), 앞서 본 것과 같이 이 사건 여신거래약정서(갑 제1, 15호증)는 진정성립이 인정되므로 원고는 피고와 사이에 이 사건 여신거래약정을 체결하였다 할 것이고, 2013. 6. 17.을 기준으로 한 이 사건 여신거래약정에 따른 원리금 및 가지급금은 합계 956,166,827원이므로, 특별한 사정이 없는 한 피고는 연대보증인인 서정선과 연대하여 원고에게 956,166,827원 및 그중 원금인 470,576,109원에 대하여 최종 원리금계산일 다음날인 2013. 6. 18.부터 다 갚는 날까지 약정 지연손해금률인 연 25%의 비율로 계산한 지연손해금을 지급할 의무가 있다.





다. 피고의 추가 주장에 관한 판단

1) 이 사건 여신거래약정의 효력이 없다는 주장에 관한 판단

이 사건 여신거래약정은 명의만 피고로 하여 이루어졌을 뿐, 실질적으로는 원고와 서정선 사이에 이루어진 것이고, 피고는 대출금을 실질적으로 수령한 사실이 없는바, 이는 민법 제107조 제1항 단서(진의 아닌 의사표시), 민법 제108조(통정허위표시) 또는 민법 제104조(불공정한 법률행위)에 해당하여 무효이므로, 피고는 이 사건 여신거래약정에 따른 원리금 및 가지급금을 변제할 의무가 없다.

2) 판단

가) (1) 먼저 이 사건 여신거래약정이 비진의표시 내지 통정허위표시에 해당한다는 주장에 관하여 보건대, 제3자가 대출 관련 서류에 주채무자로서 직접 서명 날인하였다면 제3자는 자신이 그 소비대차계약의 채무자임을 금융기관에 대하여 표시한 셈이고, 제3자가 금융기관이 정한 대출규정의 제한을 회피하여 타인으로 하여금 제3자 명의로 대출을 받아 이를 사용하도록 할 의도가 있었다거나 그 원리금을 타인의 부담으로 상환할 의사였다 하더라도, 특별한 사정이 없는 한 이는 소비대차계약에 따른 경제적 효과를 타인에게 귀속시키려는 의사에 불과할 뿐 그 법률상 효과까지도 타인에게 귀속시키려는 의사로 볼 수는 없으므로 제3자의 진의와 표시에 불일치가 있다거나 그 의사표시가 허위표시라고 보기는 어렵다(대법원 1997. 7. 25. 선고 97다8403 판결, 대법원 2003. 4. 8. 선고 2002다38675 판결 참조). 앞서 본 것과 같이 피고가 그 명의로 이 사건 여신거래약정서를 작성한 이상 원고에 대하여는 그에 따른 법률상의 효과를 자신에게 귀속시킴으로써 대출금채무에 대한 채무자로서의 책임을 지겠다는 것으로 보아야 할 것이고, 이를 두고 비진의표시 내지 통정허위표시에 해당한다고 보기는 어려



우며, 피고가 제출한 증거만으로는 원고외 피고 내지 서정선 긴에 피고로 하여금 채무를 부담하게 하지 아니할 의사로 형식적으로만 이 사건 여신거래약정을 체결하였다거나, 그와 같은 비진의표시가 있었다고 인정하기 어렵다.

(2) 또한 파산관재인은 그 비진의표시 또는 허위표시에 따라 외형상 형성된 법률관계를 토대로 실질적으로 새로운 법률상 이해관계를 가지게 된 민법 제107조 제2항, 제108조 제2항의 제3자에 해당하고, 그 선의·악의도 파산관재인 개인의 선의·악의를 기준으로 할 수는 없고, 총파산채권자를 기준으로 하여 파산채권자 모두가 악의로 되지 않는 한 파산관재인은 선의의 제3자라고 할 수밖에 없다(대법원 2010. 4. 29. 선고 2009다96083 판결 등 참조). 따라서 설령 피고의 진의와 표시에 불일치가 있었다거나 주식회사 토마토저축은행과 피고가 위와 같이 통정하였다고 하더라도, 파산채권자 모두가 위와 같은 사정을 알고 있었다고 인정할 증거가 없는 이상 피고가 그와 같은 사정으로 주식회사 토마토저축은행의 파산관재인인 원고에게 대항할 수 없으므로, 피고의 이 부분 주장은 이유 없다.

나) 다음으로 이 사건 여신거래약정이 불공정한 법률행위에 해당한다는 주장에 관하여 보건대, 민법 제104조에 규정된 불공정한 법률행위는 객관적으로 급부와 반대급부 사이에 현저한 불균형이 존재하고, 그와 같이 균형을 잃은 거래가 피해 당사자의 궁박·경솔 또는 무경험을 이용하여 이루어진 경우에 성립하는 것인바, 이 사건 여신거래약정에 따른 급부와 반대급부 사이에 현저한 불균형이 존재한다거나 혹은 피고가 궁박이나 경솔 또는 무경험의 상태에서 이 사건 여신거래약정을 체결하였다고 볼 만한 증거가 없으므로(피고는 불공정한 법률행위의 구체적인 요건에 관하여 아무런 주장·증명을 하지 않고 있다), 피고의 위 주장 역시 이유 없다.



2) 원리금 계산이 부당하다는 주장에 관한 판단

　가) 피고의 주장

　　이 사건 여신거래약정에 따른 대출금 중 300,000,000원은 토러스투자증권 주식회사의 신주청약을 위하여 송금되었고, 200,000,000원은 원고가 회계장부상 그대로 보관하되 계좌상으로만 피고 명의의 통장에 남아 있는 것으로(이른바 '꺾기대출'), 이후 원고가 임의로 대출원리금에 충당하였으므로, 위 500,000,000원이 피고에게 대출되었음을 전제로 하는 원고의 원리금 계산은 부당하다.

　나) 판단

　　갑 제13호증, 을 제23호증의 각 기재 및 변론 전체의 취지에 의하면, 이 사건 여신거래약정에 따라 개설된 피고 명의의 계좌(319-01-13-2146202)에서 2018. 5. 15. 300,000,000원 및 150,000,000원이 인출된 다음(출금을 요청하는 각 종합전표에는 피고의 인감도장이 날인되어 있다) 그중 300,000,000원이 손복조(토러스투자증권 발기인 대표)에게 송금된 사실이 인정되고, 달리 피고 주장과 같이 200,000,000원에 관하여 꺾기대출이 이루어졌다고 볼 만한 자료가 없다(피고는 이 사건 여신거래약정상의 대출금이 500,000,000원임을 전제로 위와 같이 송금된 300,000,000원을 제외한 나머지 금액이 꺾기대출되었다는 취지로 주장하는 것으로 보이나, 이 사건 여신거래약정은 그 한도가 500,000,000원인 종합통장대로 2018. 5. 15. 출금된 돈은 450,000,000원일뿐더러, 위 금액은 위 종합전표의 기재에 비추어 피고의 의사에 따라 인출된 것으로 보일 뿐이다). 따라서 피고의 위 주장 역시 받아들이지 아니한다.

4. 결론

　그렇다면 제1심판결은 그 절차가 법률에 어긋나므로 이를 취소하고, 원고의 이 사건




청구는 이유 있어 인용하기로 하여 주문과 같이 판결한다.

| | | | |
|---|---|---|---|
| 재판장 | 판사 | 이동식 |  |
| | 판사 | 조서영 | |
| | 판사 | 신유리 | |

 

# 정본입니다.

2021. 2. 5.

수원지방법원



법원주사보  선지영 

판결에 불복이 있을 때에는 이 정본을 송달받은 날(발송송달의 경우에는 발송한 날)부터 2주 이내에 상소장을 민사소송법 등 관계 법령에 따라 원심법원인 이 법원(수원지방법원)에 제출하여야 합니다(민사소송법 제71조의 보조참가인의 경우에는 피참가인을 기준으로 상소기간을 계산함에 유의).

※ 각 법원 민원실에 설치된 사건검색 컴퓨터의 발급번호조회 메뉴를 이용하거나, 담당 재판부에 대한 문의를 통하여 이 문서 하단에 표시된 발급번호를 조회하시면, 문서의 위,변조 여부를 확인하실 수 있습니다.

 

# 집 행 문

시        건 : 수원지방법원 성남지원   2013가단34692 [전자]대여금
             수원지방법원   2018나54323 [전자]대여금

이   정본은   사법보좌관의   명령에   의하여   피고(항소인)   서데비아 (791007-6100799)에 대한 강제집행을 실시하기 위하여 원고(피항소인) 파산자 주식회사 토마토저축은행의 파산관재인 예금보험공사(114671-0021454)에 게 다시 1통을 내어 준다.

2021.  7.  5.

대 법 원 

법원사무관        전 인 권 

## ◇ 유 의 사 항 ◇

1. 이 집행문은 판결(결정)정본과 분리하여서는 사용할 수 없습니다.

2. 집행문을 분실하여 다시 집행문을 신청한 때에는 재판장(사법보좌관)의 명령이 있어야만 이를 내어줍니다 (민사집행법 제35조 제1항, 법원조직법 제54조 제2항). 이 경우 분실사유의 소명이 필요하고 비용이 소요 되니 유의하시기 바랍니다.

3. 집행문을 사용한 후 다시 집행문을 신청한 때에는 재판장(사법보좌관)의 명령이 있어야만 이를 내어줍니 다(민사집행법 제35조 제1항, 법원조직법 제54조 제2항). 이 경우 집행권원에 대한 사용증명원이 필요하고 비용이 소요되니 유의하시기 바랍니다.

4. 집행권원에 채권자·채무자의 주민등록번호(주민등록번호가 없는 사람의 경우에는 여권번호 또는 등록번호, 법인 또는 법인 아닌 사단이나 재단의 경우에는 사업자등록번호·납세번호 또는 고유번호를 말함. 이하





'주민등록번호등'이라 함)가 적혀 있지 않은 경우에는 채권자·채무자의 주민등록번호등을 기재합니다.

2021-0006754880-4DTRU

서울시 서초구 서초대로 264
(법조타워 2층)
[별지 제45호서식]

공증
인가 **법무법인 유일**

(전화) 02-567-4377
(팩스) 02-563-8181

| | |
|---|---|
| 위 번역문은 원문과 상위없음을 서약 합니다. | I swear that the attached translation is true to the original. |
| 2021년 08월 12일 | Aug. 12, 2021 |
| 서약인    김보정     인 | Signature    Kim Bo Jeong |

등부  2021 년 제 1417호

## 인     증

위 번역자 김보정----------- 은
본 공증인의 면전에서 위 번역문이 원
문과 상위없음을 확인하고   서명날인
하였다.
---------------------------
---------------------------

2021년 08월 12일
  이 사무소에서 위 인증한다.

공증
인가 **법무법인 유일**

  서울중앙지방검찰청

  서울시 서초구 서초대로 264
(법조타워 2층)

공증담당변호사
정  호  길

Registered No.  2021-1417

# Notarial Certificate

KIM BO JEONG --------- personally
appeared before me, confirmed that
the attached translation is true to the
original and subscribed his(her) name.
------------------------------
------------------------------

This is hereby attested on this
12th day of Aug. 2021 at this office.

**YUIL LAW
& NOTARY OFFICE Inc.**

**Seoul Central  District Prosecutor's Office**

**264, Seocho-daero,
 Seocho-gu, Seoul, Korea**

Signature of the Notary Public
**Jung  Ho Gil**
This office has been authorized by the
Minister of Justice, the Republic of
Korea, to act as Notary Public Since
16, Feb. 2004 Under Law No.294.

210mm X 297mm
보존용지(1종) 70g/㎡